2011 ME 106

**Edgar E. PETERS et al.**

v.

**Richard D. O'LEARY.**

Supreme Judicial Court of Maine.

Argued: Sept. 14, 2011.
Decided: Nov. 1, 2011.

John C. Bannon, Esq. (orally), and John B. Shumadine, Esq., Murray, Plumb & Murray, Portland, for appellant Richard D. O'Leary.

James B. Bartlett, Esq. (orally), and Theresa Page, Esq., James B. Bartlett, P.A., York, for appellees Edgar E. Peters and Sheryl A. Peters.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

Concurrence: ALEXANDER, J.

SAUFLEY, C.J.

[¶ 1] Edgar E. and Sheryl A. Peters own a parcel of land in Ogunquit that abuts and is uphill from oceanfront property owned by Richard D. O'Leary. This litigation arose because, after a series of disputes with the Peterses, O'Leary planted a row of at least seventy-four trees near the parties' 125–foot–long boundary, which obstructed ocean views from the Peterses' newly constructed home. The Superior Court (York County, *Fritzsche, J.*) found that O'Leary had created a nuisance pursuant to Maine's spite fence statute, 17 M.R.S. § 2801 (2010),[1] and the common

1. The statute provides:

Any fence or other structure in the nature of a fence, unnecessarily exceeding 6 feet in height, maliciously kept and maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance.

17 M.R.S. § 2801(2010).

law, and granted injunctive relief to the Peterses. O'Leary argues that the court erred in reaching its findings and applying the law. The Peterses argue that the court should have awarded them attorney fees. Having considered all of the parties' arguments, we affirm the court's judgment and write to address only the central issue: whether the court erred in determining that O'Leary had created a spite fence nuisance.

## I. BACKGROUND

[¶ 2] The Peterses purchased their property in 2002. The property is separated from the ocean by property that has been owned by O'Leary, or a trust in his name, since 1988. The Peters property is uphill from the O'Leary property and is subject to an easement in favor of the O'Leary property for the purpose of providing a driveway to enter the O'Leary property. It is also subject to a deed restriction that prohibits the erection of structures within ten feet of the 125–foot-long boundary with the O'Leary property.

[¶ 3] The abutters appear to have had a cordial relationship until the Peterses decided to replace the house on their property. At first, O'Leary and his wife complained to the Peterses only about the removal of vegetation along the boundary between their properties. As the construction of the Peterses' home progressed, however, the relationship between the neighbors became increasingly contentious. O'Leary and the Peterses had disagreements about the meaning of the Peterses' deed restriction and about the vegetation to be planted in the driveway easement. As tensions were growing between the neighbors, O'Leary learned from the Town of Ogunquit's Code Enforcement Officer that vegetation planted on his property could not be removed once in place without violating shoreland zoning standards.

[¶ 4] In June 2006, as the Peterses' new home was reaching completion, O'Leary arranged to have a total of sixty-one arborvitae and thirteen pear trees planted on his property. These trees were designed to provide a continuous barrier between the properties, though they did not strictly follow the boundary line. The pear trees could reach heights of up to forty feet. O'Leary did not give the Peterses advance notice of the extensive installation he had planned.

[¶ 5] Based on these events, the Peterses filed a complaint against O'Leary in the Superior Court. The complaint, as subsequently amended, alleged that O'Leary's plantings constituted a private nuisance pursuant to the spite fence statute, 17 M.R.S. § 2801, and pursuant to the common law. The Peterses sought declaratory and injunctive relief. O'Leary answered the complaint and alleged counterclaims for trespass and for enforcement of the Peterses' deed restriction.

[¶ 6] After alternative dispute resolution was unsuccessful, the court held a three-day nonjury trial in July 2010. The court also took a view of the property at issue. O'Leary testified at the trial and admitted that he did not tell the Peterses about the extent of his planned plantings, even when they reached a written agreement with him just weeks before the plantings that allowed O'Leary to plant arborvitae on their land within the area of the driveway easement as long as the trees were trimmed to ten feet or lower to preserve their ocean views.

[¶ 7] The court entered a judgment in favor of the Peterses finding that the plantings constituted a private nuisance pursuant to the spite fence statute, 17 M.R.S. § 2801, and at common law. The court found that, although the wall of vegetation increased O'Leary's privacy, "the dominant reason for such a massive series

of plantings, that [O'Leary's landscaper] refers to as 'installations,' was to punish the [Peterses] by significantly reducing their prized view of the Atlantic."

[¶ 8] The court ordered O'Leary to remove the first three pear trees at one end of the row and the last six pear trees at the other end of the row within sixty days, and to maintain all of the arborvitae at a height of not more than eight feet. The court permanently enjoined O'Leary and his successors, heirs, assigns, or agents from "installing or maintaining any similar structure or planting exceeding 8 feet in height . . . that would impair . . . views of the Atlantic Ocean" from the Peterses' property. The court awarded damages of one dollar on O'Leary's counterclaim for trespass, and it otherwise refused to award damages, costs, or fees to either party. The court also declined to require removal of the Peterses' retaining wall within the deed-restricted area.

[¶ 9] O'Leary moved to amend the judgment, and the Peterses moved for additional findings of fact. The court made additional findings, including that O'Leary planted the trees out of spite, knowing that they could not be removed pursuant to shoreland zoning restrictions, to punish the Peterses for disagreeing with him. Notwithstanding the limited remedy imposed, O'Leary appealed to us from the court's judgment.

## II. DISCUSSION

[¶ 10] O'Leary argues that the court erred in finding that the plantings constituted a fence within the meaning of the spite fence statute and in determining that he had planted the trees with a dominant motive of malice.

[¶ 11] Maine's spite fence statute provides, "Any fence or *other structure in the nature of a fence*, unnecessarily exceeding 6 feet in height, maliciously kept and maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance." 17 M.R.S. § 2801 (emphasis added).

[¶ 12] To decide this appeal, we address two questions: (1) whether the plantings created a "structure in the nature of a fence," and (2) whether the evidence was adequate to support a finding that O'Leary maintained the structure "for the purpose of annoying" the Peterses.

### A. "Structure in the Nature of a Fence"

[¶ 13] We review legal questions of statutory interpretation de novo. *Jusseaume v. Ducatt,* 2011 ME 43, ¶ 16, 15 A.3d 714. A statute will be interpreted according to its plain meaning to discern the intent of the Legislature. *Id.* If a statute is reasonably susceptible to different interpretations, it is ambiguous, *see Gaeth v. Deacon,* 2009 ME 9, ¶ 15, 964 A.2d 621, and only then may we review additional indicia of legislative intent to determine its meaning, *HL 1, LLC v. Riverwalk, LLC,* 2011 ME 29, ¶ 17, 15 A.3d 725.

[¶ 14] The plain language of section 2801 anticipates the possibility that a "structure in the nature of a fence" could constitute a spite fence. 17 M.R.S. § 2801. We therefore discern no error in the court's conclusion that the dense planting of tall trees adjacent to the neighboring property to form a continuous barrier between the two properties created "a structure in the nature of a fence." *Id.*; *see Webster's Third New International Dictionary of the English Language Unabridged* 837 (2002) (defining a fence as "a barrier intended to prevent escape or intrusion or to mark a boundary"). Although the plantings did not exactly trace the boundary line described by the two deeds, nothing in the statute requires that the bound-

ary created by the fence run directly alongside the deed-defined boundary line.

## B. "For the Purpose of Annoying the Owners or Occupants of the Adjoining Property"

[¶ 15] We review a trial court's factual findings for clear error and its application of the law to those facts de novo. *See Degenhardt v. EWE Ltd. P'ship*, 2011 ME 23, ¶ 7, 13 A.3d 790. The findings will be upheld "if they are supported by competent evidence in the record, even if the evidence might support alternative findings of fact." *Handrahan v. Malenko*, 2011 ME 15, ¶ 13, 12 A.3d 79 (quotation marks omitted).

[¶ 16] The court found and concluded that O'Leary maliciously kept and maintained a "structure in the nature of a fence, unnecessarily exceeding 6 feet in height ... *for the purpose of annoying the owners or occupants of adjoining property*" 17 M.R.S. § 2801 (emphasis added). For purposes of the statute, a plaintiff need not prove "that malice, the purpose to annoy, was the *sole* motive for building the fence." *Healey v. Spaulding*, 104 Me. 122, 125, 71 A. 472, 473 (1908) (emphasis added). The plaintiff need only prove that "such was the dominant motive," *id.*, meaning that without that malicious motive, the fence would not have been erected or maintained, *Lord v. Langdon*, 91 Me. 221, 222, 39 A. 552, 552 (1898). If the defendant shows that the height of the fence was necessary for a nonmalicious purpose, no liability will attach. *Lord*, 91 Me. at 222, 39 A. at 552 (citing *Rideout v. Knox*, 148 Mass. 368, 19 N.E. 390, 392 (1889) (holding that a plaintiff must establish "that malevolence [is] the dominate motive" for installing the fence, which requires more than proof that the defendant took pleasure in the thought that the fence annoyed his or her neighbor)).

[¶ 17] The court's finding of malice here is supported by evidence of the number of trees planted; the size, extent, and anticipated rapid growth of the trees; O'Leary's failure to prune or trim the pear trees and arborvitae other than near his own driveway after planting; O'Leary's secrecy in making arrangements for the plantings; O'Leary's own testimony regarding his dealings with the Peterses; and O'Leary's awareness from discussions with the Code Enforcement Officer that vegetation, once planted, cannot be removed in a shoreland overlay district. The court did not err in determining, based on these findings, that O'Leary's dominant motive was malicious and that without that motive, he would not have planted the trees as he did, even to vindicate some other interest such as maintaining privacy. *See Healey*, 104 Me. at 125, 71 A. at 473; *Lord*, 91 Me. at 222, 39 A. at 552.

[¶ 18] We do not reach the additional question of whether O'Leary committed a *common law* nuisance. The court provided for limited and measured remedies that specifically address the spite fence nuisance. Thus, if there was any error in finding a common law nuisance, that error is harmless. *See* M.R. Civ. P. 61.

[¶ 19] Having fully reviewed O'Leary's and the Peterses' remaining arguments, we discern no error or abuse of discretion in the court's judgment, which imposed a fair and limited injunction, awarded O'Leary a total of one dollar in damages, and awarded no costs or fees to either party.

The entry is:

Judgment affirmed.

ALEXANDER, J., concurring.

[¶ 20] I concur in and join the Court's opinion. I write separately to emphasize

two issues regarding interpretation of the Court's opinion. First, the remedy fashioned by the trial court, and affirmed today, was carefully limited based on the trial court's findings. It left in place those recently-planted trees and bushes that provided an immediate privacy barrier between O'Leary's home and yard and the recently constructed Peters home, to the extent that the new home overlooked O'Leary's home and yard. The Court's opinion should not be read to suggest that planting of vegetation, when it constitutes a legitimate privacy barrier, may be successfully challenged as a spite fence.

[¶ 21] Second, nothing in the Court's opinion provides any invitation for neighbors to bring actions against neighbors to force cutting of vegetation to provide the complaining neighbor with a better view. The trial court's action here was based on unique facts of recent planting of large vegetation that the trial court found to have been planted with malice for the express purpose of obstructing the neighbor's view. A similar cause of action could not have prevailed to seek removal of vegetation that had grown up naturally over a period of ten or twenty or thirty years, even if that vegetation, growing naturally, had come to obstruct a neighbor's view.