2012 ME 30

**Fred D. GAY, Trustee of the Fred D. Gay Revocable Trust**

v.

**Sheila DUBE, et al.**

Supreme Judicial Court of Maine.

Argued:  Dec. 13, 2011.

Decided:  March 8, 2012.

Andrew W. Sparks, Esq., Drummond & Drummond, Portland, and Peggy L. McGehee, Esq. (orally), Perkins Thompson, P.A., Portland, for appellant Fred D. Gay, Trustee of the Fred D. Gay Revocable Trust.

David J. Jones, Esq. (orally), and F. Bruce Sleeper, Esq., Jensen Baird Gardner & Henry, Kennebunk, for appellees Sheila Dube, Scott Dube, Darrell Whitney, and Lisa Whitney.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Fred D. Gay, Trustee of the Fred D. Gay Revocable Trust, appeals, and Sheila and Scott Dube and Darrell and Lisa Whitney cross-appeal, from a judgment of the Superior Court (York County, *Brennan*, J.) regarding the ownership, classification, and use of a road and parcel of land in Dayton. Finding no error, we affirm the judgment.

## I. BACKGROUND

[¶ 2] The competing claims giving rise to this dispute may be distilled as follows: The Trust claims title by deed or by adverse possession to a triangular piece of property ("the triangle") bordering Steele Road in the Town of Dayton and to a fee interest in the road. The Dubes and Whitneys claim title by deed to the triangle and a fee interest in the road. The Trust also claims that Steele Road, formerly known as Smith Road, should not be classified as a public road, but that within that context, it has been abandoned. The Dubes and Whitneys dispute the abandonment claim.

[¶ 3] The Trust, the Dubes, and the Whitneys each own parcels abutting Steele Road in Dayton. The deed held by the Trust includes the triangle, which can be traced to a 1925 deed from an heir of one William Whittier. However, William's brother, Joseph Whittier, owned the triangle as late as 1855, and no deed in evidence describes a conveyance of the triangle by Joseph to anyone thereafter. The Trust's expert witness testified that there is a missing deed from Joseph to William conveying the triangle sometime before 1925. In 2009, the Dubes and Whitneys obtained quitclaim deeds to the triangle from Joseph's heirs.

[¶ 4] When the Dubes and Whitneys purchased their properties in 2005 and 2006, respectively, they built houses and used Steele Road for access. The road previously had been used by their predecessors in title, other abutting property owners, and people with permission to access adjacent property for agricultural and recreational purposes. The Town has done almost nothing to maintain the road other than occasionally plowing it.

[¶ 5] Fred and Carol Gay, with the Trust later substituted as plaintiff, filed a M.R. Civ. P. 80B complaint against the Town of Dayton in 2006 regarding the status of Steele Road, with additional counts against the Dubes and Whitneys for declaratory and injunctive relief, trespass, nuisance, and an action to quiet title to Steele Road.[1] The Dubes and Whitneys each counterclaimed, with claims including trespass, nuisance, and declaratory and injunctive relief. In 2009, the Dubes and Whitneys filed a motion to dismiss, which

---

1. Central Maine Power Company and Verizon New England, Inc., which was later replaced by FairPoint Communications, were included in the complaint as parties-in-interest. Ruth Smith, Sharon Smith, and Susan Williams, owners of an adjacent property, were joined as intervenors and join the Dubes' and Whitneys' brief on appeal.

the court granted as to the 80B appeal but denied as to the remaining counts. Subsequently, the Dubes and Whitneys jointly filed a supplemental pleading contesting the Trust's ownership of a portion of Steele Road, alleging that they own it as Joseph Whittier's successors in title to the abutting triangle of land. The Trust requested leave to file an amended complaint, which was granted as to the claims for adverse possession over the disputed property but denied as to the claim for slander of title.

[¶ 6] Following a nonjury trial, the court entered partial judgment, finding that Steele Road is a "public road" that had not been abandoned by the public, later clarifying that the road is a "town way." Although the court found that the Dubes and Whitneys held record title to the triangle, it concluded that the Trust owned the triangle by adverse possession. It also determined that the Dube and Whitney counterclaims, including claims to an easement in Steele Road, were moot. A final judgment was entered in February 2011 in favor of the Dubes and Whitneys on all remaining undecided claims. This appeal followed.

## II.  DISCUSSION

A.  Status of Steele Road

[¶ 7] The Trust argues that the court erred by determining that Steele Road is the type of public road classified as a town way, rather than a private way, and by determining that the road has not been abandoned. "We review a trial court's factual findings for clear error and its application of the law to those facts de novo." *Peters v. O'Leary*, 2011 ME 106, ¶ 15, 30 A.3d 825.

[¶ 8] The record includes documentary evidence that in 1855, upon application by property owner Cyrus Smith,

Steele Road was laid out by the Dayton selectmen as "a town way for the use of said town," and it was approved as laid out by a vote at a town meeting. The court's conclusion that the road is a town way was therefore not in error. *See* R.S. ch. 25, §§ 27, 31 (1841) (permitting town selectmen to lay out a town way and stating that whether a road is considered a town way is to be determined by the selectmen); *Wardens of Christ's Church v. Woodward*, 26 Me. 172, 178 (1846) (noting that the selectmen's express classification of the road is essential for the town's informed acceptance or rejection of the road as laid out). No facts in the record or subsequent amendments to the governing statutes compel an alternative conclusion. *See* R.S. ch. 18, §§ 18–19, 21 (1857); 23 M.R.S. §§ 3021–23 (2011); *Inhabitants of Orrington v. Cnty. Comm'rs*, 51 Me. 570, 573 (1863) (Kent, J., concurring); *Browne v. Connor*, 138 Me. 63, 66–67, 21 A.2d 709 (1941); *Brown v. Warchalowski*, 471 A.2d 1026, 1031–32 (Me.1984); *Fournier v. Elliott*, 2009 ME 25, ¶ 19 n. 6, 966 A.2d 410.

[¶ 9] The Trust also contends that even if Steele Road is a town way, the court erred by concluding that it has not been abandoned. We evaluate this contention pursuant to the common law doctrine of abandonment because the Trust has not alleged statutory abandonment by the Town. *See* 23 M.R.S. § 3028 (2011); *Martin v. Burnham*, 631 A.2d 1239, 1240–41 (Me.1993).

[¶ 10] At common law, "a presumption of a public intent to abandon a road may be raised by evidence of nonuse for twenty years or more." *Shadan v. Town of Skowhegan*, 1997 ME 187, ¶ 4, 700 A.2d 245 (quotation marks omitted). Whether a public road has been abandoned is a question of law reviewed de novo, but the facts on which the court relied in its determination are reviewed for

clear error. *See Glidden v. Belden*, 684 A.2d 1306, 1312 (Me.1996); *Peters*, 2011 ME 106, ¶ 15, 30 A.3d 825.

[¶ 11] The court found that Steele Road is a dead-end road that was created to serve Cyrus Smith's family and its guests, and that it was continuously used by the people for whom it was intended to be used. These findings are not clearly erroneous, and the public's use of the road must be understood in this context. In this case, use by people who may in some instances be considered separable from the general public in fact constituted the use by the public that was intended when the road was created. *Cf. Shadan*, 1997 ME 187, ¶¶ 5, ¶ 7, 700 A.2d 245; *Browne*, 138 Me. at 66–67, 21 A.2d 709. Because there was no substantial change in the use of Steele Road over time, the Trust failed to establish nonuse by the public, and the court did not err by concluding that Steele Road has not been abandoned.

B. Ownership of the Triangle

[¶ 12] The Trust also contends that the court erred by simultaneously adjudicating the Trust's claim of adverse possession of the triangle of undeveloped land abutting Steele Road and the Dubes' and Whitneys' claim of record title to the same parcel. The Dubes and Whitneys argue that there is insufficient evidence to support the Trust's adverse possession of the triangle.

[¶ 13] The court's simultaneous adjudication of the parties' competing claims to ownership of the triangle was not in error. A party's unproven allegation of adverse possession does not bar a court from simultaneously considering the opposing party's unproven allegation of title ownership. *See Richards Realty Co. v. Inhabitants of Town of Castle Hill*, 406 A.2d 412, 413 (Me.1979) (addressing an adverse possession claim pursuant to 14

M.R.S. § 815 (2011)). If it were otherwise, and the party asserting adverse possession failed in its proof, the court would be unable to adjudicate the opposing party's claim for declaratory relief. Here, the court did not err in simultaneously adjudicating the Trust's claim of adverse possession and the Dubes' and Whitneys' claim of title to the disputed property.

[¶ 14] With respect to the court's resolution of those claims, there was competent evidence in the record—in the form of witness testimony and written deeds—to support the court's finding that the Dubes and Whitneys were holders of a deed in a valid chain of title to the triangle. *See Rega v. L.S.R.*, 2010 ME 96, ¶ 3, 5 A.3d 666 ("The trial court is free to determine the weight and credibility to be accorded to testimony and other evidence."). The same is true regarding the Trust's claim of adverse possession. The court found that the Trust and its predecessors in title have treated the triangle as part of an undivided parcel spanning Steele Road since at least 1963, a period of over forty years. They have paid taxes on the triangle; posted no trespassing signs; used it for cutting wood, training show cattle, and collecting sap; and have given permission for others to cut wood, trim brush, and collect sap there.

[¶ 15] The record thus contained sufficient evidence for the court to find that the use of the triangle by the Trust and its predecessors in title established ownership by adverse possession of that parcel as against the chain of record title ending with the Dubes and Whitneys. *See Weeks v. Krysa*, 2008 ME 120, ¶¶ 11–13, 955 A.2d 234; *Stowell v. Swift*, 576 A.2d 204, 205–06 (Me.1990); *Mercier v. Allen*, 445 A.2d 1011, 1013 (Me.1982). The court's ultimate conclusion that the Trust is the triangle's

current owner by adverse possession is not in error.[2]

## C. Additional Claims

[¶ 16] The Trust argues that the court abused its discretion by denying the Trust's motion to amend its complaint to add a claim for slander of title against the Dubes and Whitneys. However, the Trust has failed to demonstrate that, based on the record before the court at the time the motion was filed, the amendment was necessary to prevent injustice or that its denial constituted a clear and manifest abuse of discretion. *See Efstathiou v. The Aspinquid, Inc.*, 2008 ME 145, ¶ 21, 956 A.2d 110.

[¶ 17] Finally, the Dubes and Whitneys contend that the court erred by determining that their claim to an easement over Steele Road was moot based on the court's conclusion that it is a town way. Whether an issue is moot is a question of law that is reviewed de novo. *See Roberts v. Roberts*, 2007 ME 109, ¶ 6, 928 A.2d 776. As we have stated:

> An issue is deemed to be moot when there is no real and substantial controversy, admitting of specific relief through a judgment of conclusive character. When determining whether a case is moot, we examine whether there

remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources.

*Anthem Health Plans of Me., Inc. v. Superintendent of Ins.*, 2011 ME 48, ¶ 5, 18 A.3d 824 (quotation marks and citations omitted).

[¶ 18] Because a public easement exists in Steele Road as a town way, no practical consequences for the Dubes' and Whitneys' right of access will flow from a decision on their private easement claim, and the claim is properly treated as moot. *See id.; City of Rockland v. Johnson*, 267 A.2d 382, 384–85 (Me.1970); *see also* 23 M.R.S. § 3026(1) (2011) (providing that a public easement remains upon the discontinuance of a town way, unless otherwise stated); *id.* § 3028(1) (providing that roads abandoned pursuant to this section have the same status as if they were discontinued pursuant to section 3026); Knud E. Hermansen & Donald R. Richards, *Maine Roads and Easements* § 5.10.2 at 73–74 (3d ed. 2007) (noting that a public easement may remain following discontinuance or abandonment).

[¶ 19] Should Steele Road be discontinued or abandoned by the Town in the future, the judgment will not preclude the Dubes and the Whitneys from asserting

---

2. By affirming the Trust's ownership of the triangle of land abutting the disputed portion of Steele Road, combined with the Trust's undisputed ownership of the land abutting the opposite side of that strip of road, we necessarily determine that the Trust owns the fee in that section of road. *See* 33 M.R.S. § 465 (2011); *Lamb v. Euclid Ambler Assocs.*, 563 A.2d 365, 367–68 (Me.1989); *Sutherland v. Jackson*, 32 Me. 80, 82 (1850). When the Town laid out Steele Road in 1855, only a public easement arose pursuant to the common law; the creation of the road did not vest fee simple title to the road or the underlying land in the Town, and any private rights therefore remained intact but restricted by the

public easement. *See* Knud E. Hermansen & Donald R. Richards, *Maine Roads and Easements* § 3.2.2 at 7, § 3.3 at 9–10 (3d ed. 2007); *City of Rockland v. Johnson*, 267 A.2d 382, 384–85 (Me.1970); *cf.* 23 M.R.S. § 3023 (2011) (changing the common law so that roads created after December 31, 1976 are taken in fee simple absolute by the municipality unless otherwise indicated). Thus, while the Trust owns the fee in the road, it is open to access by the public by virtue of the public easement in the town way, and the Trust may not engage in uses inconsistent with that easement. *See City of Rockland*, 267 A.2d at 384–85; *Kuhn v. Farnsworth*, 69 Me. 404, 406 (1879).

their easement claim. *See Colquhoun v. Webber*, 505 A.2d 794, 795 (Me.1986) (concluding that there was no preclusive effect where the determination of a particular issue was unnecessary to the final judgment); *cf. Flaherty v. Muther*, 2011 ME 32, ¶ 70 n. 12, 17 A.3d 640 (noting that a claim for interference with an easement was not ripe for adjudication but that a remedy may be available for interference in the future).

[¶ 20] The parties' remaining arguments are without merit and require no further discussion.

The entry is:

Judgment affirmed.