STATE OF MAINE                                    SUPERIOR COURT
SOMERSET, ss.                                     Docket No.: 11-AP-004
                                                  JCN – SOM-5/21/2012


Fred Brown,

        Petitioner

                                    DECISION AND ORDER

        v.


John Morris, Commissioner
Maine Department of Public Safety,

        Respondent


        This matter is before the Court on Petitioner's request, pursuant to M.R. Civ. P.

80C, for judicial review of Respondent's denial of Petitioner's application for a permit to

carry a non-concealed firearm by a prohibited person. In this matter, Petitioner contends

that (a) Respondent violated the provisions of 15 M.R.S. § 393 (2011), the statute that

governs the process by which a prohibited person can request a permit, (b) the denial of

Petitioner's request for a permit was in violation of his constitutional due process and

equal protection rights, and (c) Respondent's decision was arbitrary, capricious, and an

abuse of discretion.

**Factual/Procedural Background**

        As the result of a conviction on two counts of gross sexual assault (17-A M.R.S. §

253(2)(B)), a Class B offense, Petitioner is prohibited from possessing a firearm. *See* 15

M.R.S. § 393(1)(A-1)(1) (2011). In June 2011, Petitioner submitted an Application for a

Permit to Carry a Non-Concealed Firearm by a Prohibited Person to the Department of

1

Public Safety.[1] He amended the application on July 14, 2011. The Department subsequently initiated an investigation pursuant to 15 M.R.S. § 393 (2011).

As required by the statute, Respondent notified several individuals, including Superior Court Chief Justice Thomas Humphrey and the Attorney General, of Petitioner's application. 15 M.R.S. § 393(4) (2011). Both Chief Justice Humphrey and Assistant Attorney General Laura Yustak Smith objected to the application. In his written objection, Chief Justice Humphrey stated in relevant part:

> I do not have any personal knowledge of Mr. Brown or the evidence underlying any particular offense for which he stands convicted. However, based on the information you have provided regarding his criminal history, which includes Gross Sexual Assault (2) (Felony), it is my opinion that, in the absence of substantial reliable evidence to the contrary, there is a sufficient basis for denying the application. Accordingly, pursuant to section 393(4), I submit this objection to the above-referenced application for a firearms permit.

Assistant Attorney General Smith responded:

> I have reviewed the Criminal History Record you provided, which reflects a larceny conviction dating from 1962 and two convictions in 1991 for gross sexual assault in violation of 17-A M.R.S.A. § 253(2)(B) [Class B]. Based on this record, the applicant compelled another person or persons to engage in a sexual act(s) by threat. Because of the nature of Class B gross sexual assault, a crime of violence against a person, this Office objects to the permit being issued.

As part of his consideration of Petitioner's request for a permit, in addition to the positions of Chief Justice Humphrey and Assistant Attorney General Smith, Respondent reviewed the application, the results of a background investigation conducted by the Department of Public Safety, and Petitioner's criminal record. By letter dated August 18, 2011, Respondent advised Petitioner of the denial of his request, citing the objections of

---

[1] "A person subject to the provisions of subsection 1, paragraph A-1 or C as a result of a conviction or adjudication may, after the expiration of 5 years from the date that the person is finally discharged from the sentences imposed as a result of the conviction or adjudication, apply to the commissioner for a permit to carry a firearm subject to subsection 4." 15 M.R.S. § 393(2) (2011).

2

Chief Justice Humphrey and Assistant Attorney General Smith as the bases of the decision. Petitioner then filed this action in accordance with M.R. Civ. P. 80C.

## Discussion

In an action for judicial review under M.R. Civ. P. 80C, the Court is "confined to the record upon which the agency decision was based ..." 5 M.R.S. § 11006(1). The Court must defer to the administrative agency and review the agency decision for an abuse of discretion, error of law, or findings unsupported by substantial evidence from the record. *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013. Additionally, the Court will give great deference to an agency's interpretation of a statute it is charged with administering. *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223; *see also Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 21, 905 A.2d 285 ("We defer to the Secretary's interpretation if the statutes or statutory scheme are ambiguous and if his interpretation is reasonable."). Overall, the Court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result. *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982).

### A. Violation of 15 M.R.S. § 393

Petitioner first argues that Respondent violated the provisions of 15 M.R.S. § 393 (2011), the statute that governs the process by which a prohibited person can request a permit. Section 393 delineates the manner in which Respondent is to handle an application investigation. Under the statute, as part of the investigation, Respondent must notify certain people of the application. 15 M.R.S. § 393(4) (2011). Section 393 further provides:

3

If, within 30 days of the sending of notice, a person notified objects in writing to the commissioner regarding the initial issuance of a permit and provides the reason for the objection, the commissioner may not issue a permit. The reason for the objection must be communicated in writing to the commissioner in order for it to be the sole basis for denial.

15 M.R.S. § 393(4)(A) (2011).

Petitioner argues that Respondent's denial of the application was inappropriate because individuals without personal knowledge of Petitioner and his particular circumstances submitted the objections to the issuance of the permit. Noting that Chief Justice Humphrey and Assistant Attorney General Smith based their objections solely on the nature of the offense for which Petitioner was convicted, Petitioner contends that the legislature did not intend for the mere nature of the offense to serve as the basis for a denial of a permit. Otherwise, Petitioner maintains, the legislature would have prohibited individuals convicted of certain crimes from applying for a permit.

Absent an ambiguity in the statute, the Court need only consider the statutory language to determine the legislative intent. That is, "[a] statute will be interpreted according to its plain meaning to discern the intent of the Legislature. If a statute is reasonably susceptible to different interpretations, it is ambiguous, and only then may we review additional indicia of legislative intent to determine its meaning." *Peters v. O'Leary*, 2011 ME 106, ¶ 13, 30 A.3d 825 (internal citations omitted). Here, the statute is not ambiguous as to whether a person's objection must be based on personal knowledge. The plain language of the statute simply requires that the objecting party state the reason for the objection, and does not mandate that the party base the objection on personal knowledge. In *Gonzalez v. Comm'r, Dep't of Pub. Safety*, 665 A.2d 681, 683 (Me. 1995), the Law Court recognized that personal knowledge was not necessary when it wrote that "[e]ach of those persons [whom Respondent must notify of an application]

4

has some personal knowledge of the applicant *or some special concern about the granting of a permit.*" (emphasis supplied). In this case, in accordance with the statute, Chief Justice Humphrey and Assistant Attorney General Smith clearly stated the reasons for their objection. Petitioner's contention, therefore, that Respondent improperly relied upon the objections of Chief Justice Humphrey and Assistant Attorney General Smith because they lacked personal knowledge of Petitioner's situation fails.

Petitioner next argues that Respondent had the authority to issue the permit despite the objections of Chief Justice Humphrey and Assistant Attorney General Smith. As noted above, 15 M.R.S. § 393(4) provides in pertinent part, "[i]f . . . any person so notified objects in writing to the issuance of a permit, a permit may not be issued," 15 M.R.S. § 393(4) (2011). Petitioner contends that by use of the word "may," the legislature granted Respondent the discretion to issue the permit even if one of the persons notified objects to the request.

In support of this argument, Petitioner points to the legislature's modification of subsection 4 of section 393. In 2007, the legislature changed the language in subsection 4 from "If . . . any person so notified objects in writing to the issuance of a permit, *none shall* be issued," 15 M.R.S. § 393(4) (2006) (emphasis supplied), to "If . . . any person so notified objects in writing to the issuance of a permit, *a permit may not* be issued," 15 M.R.S. § 393(4) (2011) (emphasis supplied). Petitioner maintains that the change from "shall" to "may" reflects the legislature's intent to grant to Respondent the ability to approve an application despite any objections that might be raised. The Court disagrees. According to the drafting standards of the Office of the Revisor of Statutes, "may not" is the preferred term when the legislature wants to prohibit certain conduct. Specifically, the Maine Legislative Drafting Manual states, "[d]o not use 'shall not.' Use 'may not' to

5

prohibit an action. 'May not' is broader than 'shall not' as 'may not' negates the authority to perform an action as well as prohibiting the action itself." Maine Legislative Drafting Manual, 92 (rev. Aug. 2009).[2] The Court concludes, therefore, that Respondent did not have the discretion to grant the permit. Instead, Respondent was required to deny Petitioner's request for the permit upon receipt of the objections that were submitted in accordance with the statute.[3]

### B. Due Process

Petitioner asserts that in his denial of Petitioner's application, Respondent violated Petitioner's due process rights. Petitioner relies on recent U.S. Supreme Court cases in which the Supreme Court describes ownership of a firearm as a fundamental right guaranteed by the Second Amendment to the United States Constitution.[4] *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Petitioner argues that because the right to keep and bear arms is a fundamental right, the State's infringement on the right requires a strict scrutiny analysis by the Court.

While the Supreme Court recognized the importance of the right to keep and bear arms, the Court made clear that the right was not unlimited, and that the Court's more recent decisions did not alter certain existing limitations on a person's right to possess a firearm:

> Although we do not undertake an exhaustive historical analysis today of
> the full scope of the Second Amendment, nothing in our opinion should be
> taken to cast doubt on longstanding prohibitions on the possession of

---

[2] The manual is available at www.maine.gov/legis/ros/manual/Draftman2009.pdf.

[3] The Court notes that the legislature also used "may not" in section 393 to prohibit a person convicted of a felony from possessing a firearm. "A person may not own, possess or have under that person's control a firearm ..." if they are convicted of a felony. 15 M.R.S. § 393(1) (2011).

[4] The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

6

firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 554 U.S. at 626-27; *see also McDonald*, 130 S. Ct. at 3047 (noting that applying the fundamental right to keep and bear arms to the States "does not imperil every law regulating firearms."). Prohibitions on a felon's right to possess a firearm are in fact "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626 & n.26.

Because prohibitions on a felon's right to possess a firearm are "presumptively lawful regulatory measures," and because, as the Supreme Court acknowledged in *Heller*, the prohibitions are longstanding, laws that govern the ban on a felon's right to possess a firearm fall outside the protection of the Second Amendment. *See United States v. Barton*, 633 F.3d 168, 172 (3d Cir. 2011). Petitioner's substantive due process challenge thus fails.[5]

Petitioner also contends that the process proscribed by section 393(4)(A) violates his procedural due process rights. When assessing a procedural due process claim, the Court must "determine if the government has deprived a claimant of life, liberty, or property interests," and, if so, balance the factors set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). *DaimlerChrysler Corp. v. Exec. Dir., Me. Revenue Serv.*, 2007 ME 62, ¶ 26, 922 A.2d 465; *see also Jusseaume v. Ducatt*, 2011 ME 43, ¶ 12, 15 A.3d 714 (listing the due process requirements "when significant rights are at stake"). Simply stated, in the Court's view, Petitioner does not have a property interest, or any other

_____

[5] Even assuming 15 M.R.S. § 393 falls within the protection of the Second Amendment, Petitioner's challenge would fail. Courts that have determined that regulations on a felon's ability to possess a firearm implicate the Second Amendment have applied the intermediate level of scrutiny. *See, e.g., United States v. Masciandaro*, 638 F.3d 458, 469-70 (4th Cir. 2011); *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010). The state's interest in the regulation of the possession of firearms is important, and the regulation authorized by 15 M.R.S. § 393 is reasonable and does not unnecessarily infringe the right to possess a firearm.

7

constitutionally protected interest related to the application for a permit to possess a firearm after Petitioner has been legally banned from possessing a firearm.[6] Accordingly, the process set forth in section 393(4)(A) does not generate any procedural due process concerns.

### C. Equal Protection

Petitioner argues that section 393(4) violates the Equal Protection Clause of the United States and Maine Constitutions because all felons are not treated the same under the statute. The statute provides a process by which all felons can apply for a permit, and does not distinguish among felons. Petitioner cannot, therefore, establish that similarly situated individuals are treated differently in the process. As the Law Court explained, Petitioner is thus required to demonstrate a discriminatory intent or purpose:

> The constitutional prohibition against denial of equal protection of the law to any person is implicated when action by the state results in treatment of a person different than the treatment given similarly situated individuals. Unequal application of a law to those who are entitled to be treated alike is not a denial of equal protection unless there is shown to be an element of intentional or purposeful discrimination. Discriminatory intent or purpose may appear on the face of the action taken with respect to a particular class or person, or it may only be shown extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself. Thus, an invidious intent to discriminate may be inferred from the totality of relevant facts.

*Aucella v. Winslow*, 583 A.2d 215, 216-17 (Me. 1990) (internal citations and quotation marks omitted). In this case, there is no evidence to suggest that the process applies differently to similarly positioned individuals, nor is there any evidence of any

---

[6] In *Gonzalez v. Comm'r, Dep't of Pub. Safety*, 665 A.2d 681, 683 (Me. 1995), the Law Court found that "[a]n applicant for a permit does not have a property interest in that permit if there is broad discretion to withhold the benefit," and noted that there is broad discretion in section 393. The Law Court further concluded that section 393 provides the applicant with "only a unilateral expectation and not a property interest in that permit," which means the applicant "may not complain of its denial on due process grounds." *Id.* Petitioner argues that the Supreme Court's recent decisions in *Heller* and *McDonald* effectively overruled *Gonzalez*. As explained above, the Court does not believe that the Supreme Court's analysis requires the Court to alter the analysis of the limitations on a felon's right to possess a firearm.

8

discriminatory intent or purpose. Petitioner cannot, therefore, prevail on his equal protection claim.

D. Arbitrary Decision

Finally, Petitioner argues that Respondent's decision was arbitrary and constitutes an abuse of discretion. As discussed above, section 393 requires that Respondent deny the permit if a person to whom notification is required objects. 15 M.R.S. § 393(4) (2011). Given the objections received by Respondent, Respondent did not have discretion to issue the permit. Respondent would have erred if he had granted Petitioner's request for a permit. Because in this case Respondent did not have the discretion to issue the permit, Petitioner cannot successfully challenge the decision as being arbitrary or an abuse of discretion.

## Conclusion

Based on the foregoing analysis, the Court affirms Respondent's decision to deny Petitioner's request for a permit to carry a non-concealed firearm.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated: 5/31/12

Justice, Maine Superior Court

9

| Date Filed | 09/13/11 | Somerset County | Docket No. | AP-11-004 |

Action ___ 80C – Appeal ___

Fred Brown

Amended
09/23/11
vs.

John Morris in his Capacity as Commissioner of the Maine Department of Public Safety & ~~Office of the Attorney General~~

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John Alsop Esq.<br>PO Box 189<br>Skowhegan ME  04976<br>Tel: #474-6200 | Lauren LaRochelle AAG<br>6 State House Station<br>Augusta ME  04333-0006<br>Tel: #626-8800 |

| Date of Entry | |
|---|---|
| 09/13/11 | Notice of Appeal - Rule 80C - Petition for Review of Final Agency Action, complaint summary sheet, and $150.00 filing fee all received and filed 09/13/11. |
| | Copies fowarded to the Attorney General's Office this day. |
| 09/19/11 | Motion to Amend Petition with Amended Petition for Review of Final Agency Action received and filed 09/16/11. |
| 09/23/11 | Motion to Amend Petition is granted.  Dated:  09/23/11 /s/ John Nivison, JSC. cc: Alsop and AAG |
| 09/27/11 | Entry of Appearance received and filed 09/26/11 by Lauren LaRochelle, AAG whom is representing Commissioner of the Department of Public Safety. |
| 09/30/11 | Certification of Record and record received and filed 09/30/11. |
| | Notice and Briefing Schedule forwarded to John Alsop and L Larochelle. |
| 11/16/11 | Brief of Petitioner on 80C Appeal received and filed 11/16/11. |
| 12/19/11 | Respondent's Brief received and filed 12/16/11. |
| 02/22/12 | Notice of hearing forwarded to all counsel for 80C hearing scheduled March 28, 2012 @ 8:30 am. |
| 03/29/12 | Hearing held on 3/28/12 before Justice John Nivison, presiding. John Alsop, Esq., Lauren Larouchelle, AAG, and Audrey Braccio, Esq. were present and addressed the court.  Electronic Recording Tape No. 439, Index No. 349-1402. Case taken under advisement. |