41/1/2014 ENTERED OCT 2 9 2014

me/

STATE OF MAINE
CUMBERLAND, SS

SUPERIOR COURT
DOCKET NOS. RE-12-10
RE-12-117

CUM-JAW-04-01-14

MICHAEL PALMER, LORI PALMER
and MARY ANN BRADSTREET,
    Plaintiffs

v.

RANJIT S. GILL, GURDARASHAN GILL,
PALMER POINT ROAD ASSOCIATION,
    Defendants

**DECISION AND ORDER**

BRENDA F. SKILLIN and JOHN W. SKILLIN,
    Plaintiffs

v.

LORI PALMER and MICHAEL PALMER,
    Defendants

STATE OF MAINE
Cumberland co. Clerk's Office

APR 02 2014

RECEIVED

## INTRODUCTION

This litigation concerns (1) a disputed parcel of land, called in this litigation "the wedge", and (2) whether the Palmers' retaining wall encroaches on the Skillins' right of way[1] across the Palmers' land along the shore and encroaches on the rights of the defendants to Palmer Point Road.

The Palmer Point Road neighborhood contains six homes and begins where Palmer Point Road turns off of Staples Point Road and heads towards Casco Bay with the

---

[1] Mrs. Karen Trip also has a deeded right of way to her property located easterly of the Skillins' property; however, Mrs. Tripp is not a party to this action and she does not contend that the Palmers have interfered with her access to her property over the right of way.

Spears' home[2] on the right and the Gills' home across the road from the Spears. As one moves down Palmer Point Road towards Casco Bay, on the waterfront is the Bradstreets' home on the right and across the road is the Palmers' home. At the Palmers' home the paved road ends and proceeds either to the wedge and Casco Bay or to the left along a gravel right of way that turns along the shore of Casco Bay traveling easterly across the front of the Palmers' property, the Skillins' property, ending at the Tripp's property.[3] Until 2008, that neighborhood was relatively peaceful. The Palmers gave permission to the Spears and the Dickinsons, the Gills predecessors, and then to the Gills to access Casco Bay by crossing over the Palmer property along or near the wedge. The Spears, Dickinsons and Gills did not have waterfront property or deeded waterfront access.

The Palmer property as well as other lots located off of Staples Point Road were part of a larger tract owned by Richard Learned of New Hampshire. In the 1960's Learned subdivided the land and conveyed out about a dozen lots, some of which were accessed by the private road known as Palmer Point Road. In granting rights over Palmer Point Road to the various lot owners which were benefited by the road, Learned never conveyed the fee interest or the land under which the road runs to any of the lot owners. Nor did he convey the wedge, which was a gap created in his conveyance to the Bradstreets in the 1960's.

1.    The Wedge and Palmer Point Road

The current dispute began in 2008 when two events occurred. Ranjit Gill told Michael Palmer that he does not control the wedge and the Gills have the right to access

---

[2] The Spears property was for sale at the time of trial.

[3] The Palmers, Skillins, Tripp and Gills all have another access to their properties across the back of the Palmers, Skillins and Tripp's property. The Gills obtained their legal access by virtue of the Stipulated Judgment entered in this litigation with the dismissal of the counterclaim.

2

the water through the wedge without Palmer's permission. Up to that point, Michael Palmer believed he owned to the midway point of the wedge where his land met the land of his neighbors, the Bradstreets, along a line of oak trees. The Bradstreets believed they owned on the other side to the midway point of the wedge.

Although much of this dispute is about who owns the wedge, the court heard almost no evidence of anyone, not even the clammers who trespassed, actually using the wedge because it is steep and blocked by a large oak tree at the edge of the bank, making it difficult to access the water through the wedge. Almost all of the testimony is that prior to 2008 people accessed the water by walking to the east of the wedge, which is clearly Palmer property. Without clearing the oak trees and installing steps or otherwise rebuilding the bank, climbing down the wedge's embankment to the water is perilous.

Further fueling the 2008 dispute, Michael Palmer told the Gills that they did not have the right to use Palmer Point Road or the wedge. In fact, the Gills property is not located on Casco Bay and the deed for the Gill parcel does not convey an easement to Palmer Point Road or the wedge or Casco Bay. The Gills access to their property is from Staples Point Road at the end of Palmer Point Road, even though the Gills driveway is on Palmer Point Road. In contrast, the Skillins have an easement that includes Palmer Point Road and the gravel driveway along the waterside of the Palmer property to the Skillin property.

When Learned conveyed lots, he did not include the wedge or land covered by Palmer Point Road. Unbeknownst to the parties, Richard Learnard never conveyed this strip of property. A survey completed in 2010 by Mann Associates brought this fact to the attention of the homeowners on Palmer Point Road and triggered the race to get the

3

devisees of Learnard to grant them easements over the wedge and Palmer Point Road. It is this easement that the Palmers and Bradstreets challenge in this litigation and claim they own the wedge by virtue of adverse possession.

2.    The Retaining Wall and Right of Way[4]

In the early 2000s Michael Palmer began building a retaining wall along the right of way across the front of his property. The Skillins, one of the neighbors with a right of way across Palmers' land, complained that the Palmers' retaining wall interfered with the Skillins' access to their property on their deeded right of way. The Skillins were deeded their property on September 2, 1982 and their deed described "a right of way, as now existing, to be used in common with others over land formerly of Walter S. Palmer and along the bank for pedestrians and vehicles to the lot hereby conveyed." The location of the right of way on the face of the earth was not described, other than to say along the bank. It was not until the Tripps purchased their property in 1983, that a centerline for the right of way was described in their deed. Mrs. Tripp is not a party to this action and has not complained about the location or access to the right of way. However, both the Skillins and Gills have complained about the encroachment of the retaining wall on Palmer Point Road and the Skillins right of way along the water.

3.    Palmers, Gills and Palmer Point Road Association

The plaintiffs seek a declaration that (1) they are the owners of the wedge by virtue of adverse possession; (2) an easement to the wedge granted by the Road

---

[4] Throughout the trial, this right of way was also called the traveled way, roadway, gravel drive, gravel way, gravel driveway, and travel area. There is only one right of way and it is the same right of way described in the 1982 Skillin deed and the 1983 Tripp deed. The Skillins' deed conveys a "right of way, now existing, to be used in common with others on land formerly of Walter S. Palmer and along the bank for pedestrians and vehicles to the lot being conveyed."

4

Association to the Gills is of no force and effect (Count I); and (3) enjoins the defendants from interfering in plaintiffs' rights (Count II). The Gills filed a counterclaim alleging the Palmers built a wall and this wall trespasses on Association land along Palmer Point Road (Count III) and seeking in Count IV an injunction preventing the Palmers from interfering in the Gills and the Association's rights in the easement by removing the wall and ceasing their trespassing activities.

4.      Skillins and Palmers[5]

The Skillins seek a declaration that (1) they own an easement across the right of way; (2) locates the right of way by using the Tripps' centerline (Count I); (3) enjoins the Palmers from interfering with their right of access via the right of way; and (4) requires the Palmers to relocate the wall away from the boundaries of the right of way (Count II). They seek damages in Count III for interference in the use of the right of way and in Count IV a determination of a nuisance in the Palmers' use of their property by altering the flow of water into the Skillins' property. There is no evidence as to Count IV and that count is hereby dismissed with prejudice.

The Palmers filed a counterclaim against the Skillins seeking in Count I a declaration that the Skillins have no right to drive their vehicles in a way that damages the Palmers' lawn, trees and bushes, and in Count II an injunction from infringing on the Palmers' property. The court rejects these claims because although Mr. Skillin admits that he drove intentionally on the lawn adjacent to the Palmers' land, he did not actually

_____

[5] The Skillins filed a separate action on or about March 20, 2012. The court assigned docket no. RE-12-10 to that lawsuit. In an order dated July 25, 2012, the court consolidated the two actions under docket no. RE-12-10. For purposes of the trial, the parties agreed that the Palmers and Mrs. Bradstreet would be referred to as "Plaintiffs" and that the Gills, Skillins and Road Association would be referred to as "Defendants." The court adopts these designations for purposes of this Decision and Order.

5

drive on the Palmers' land.[6] Further, there is no evidence of any damages to the Palmers' property. Therefore, the Palmers have failed to meet their burden of proof on this claim and Counts I and II of the Palmers' counterclaim are dismissed with prejudice.

The trial occurred on October 15 – 18, 2013. The court heard testimony from a number of witnesses and accepted a number of exhibits.[7] The court also conducted a view of the wedge, Palmer Point Road and the right of way. The following findings of facts and conclusions of law are made, in addition to findings of fact that appear in the Introduction.

## FINDINGS OF FACTS

1. The Wedge

For decades the Palmers and Bradstreets believed they shared a common boundary between their properties fronting Casco Bay in Freeport, Maine. Michael Palmer purchased his property, located at 8 Palmer Point Road, from his father, Ronald Palmer, in 1998. The land had been in the Palmer family since the 1930s. Ronald Palmer acquired the back half of the Palmer property from his grandfather, Walter Palmer, in 1965. Walter Palmer purchased the portion of the Palmer property from Richard Learnard in 1964. Ronald Palmer acquired the waterfront half of the Palmer property from his grandfather, Walter Palmer, in 1974. Walter Palmer inherited the waterfront portion of Palmer property, along with other property on Palmer Point Road, from his aunt, Ida

---

[6] Mr. Skillins admits that he intentionally drove his car onto the lawn maintained by the Palmers to make the point that the Palmers do not own this property. The Palmers do not contend that they own the land that Mr. Skillins drove over, although they do maintain it.
[7] The court reserved decision on Defendants' Exhibit 11, and now excludes this exhibit as inadmissible under M.R.Evid. 803(16). Even if this exhibit were admitted, it does not change the court's analysis. See n. 9, below.

6

Griffin, in the 1930s. Ida Griffin acquired titled to her property on Palmer Point Road, including the waterfront half of the Palmer property, from Abbie S. Torrey in 1904.

The Bradstreet family has held title to their property since 1964. Mary Ann Bradstreet and her late husband, Neal Bradstreet, acquired titled to the waterfront half of the Bradstreet property, located at 6 Palmer Point Road, from Richard Learnard in 1964.[8] Mary Ann and Neal Bradstreet acquired title to the remaining portion of the Bradstreet property from Richard Learnard in 1970.

The Palmers and Bradstreets believed that their properties joined and were adjacent to each other in an area that has been called the wedge in this litigation. Ronald Palmer visited his property regularly his entire life. He lived on the property fulltime from approximately 1965 to 1975. After 1975, he continued to regularly visit the property. Michael Palmer, like his father, either lived on the property fulltime or when not there fulltime, he visited the property on weekends and seasonally. He moved to the Palmer property fulltime in 1994. Michael and Lorie Palmer were fulltime residents of the property until 2011 when they started renting the property to tenants.

The Bradstreets, along with their children, began visiting their property from the day they bought it in 1964. Within a few years of buying the property, they built a house and began staying on their property seasonally, from the day school ended in the spring until the day school started in the fall. After Neal Bradstreet died in 1984, Mary Ann Bradstreet would stay at Bradstreet Property for shorter periods of time, but still visited every summer. From 1981 to 2003, the Bradstreets' son, David Bradstreet, spent 3 to 4

---

[8] The Bradstreet property is now owned by the Revocable Indenture of Trust of Mary Ann Bradstreet. Mary Ann Bradstreet as Trustee of the Trust transferred the property to the trust in 2000.

7

weeks in August of each summer at the property. Members of the Bradstreet family visit the Bradstreet property every summer.

Both families maintained the wedge, which ranges between 3.8 and 4.1 feet[9] along the banks of Casco Bay. They maintained the wedge consistent with the way they managed other areas of their yards. The wedge contains oaks and white pines and other scrub brush. The oaks have grown over the years and crowded out the pines. Throughout the time of their occupation of their properties, the Palmers and Bradstreets have maintained the wedge raking leaves and removing debris to clear the drainage for both properties. They have mowed the lawn and cut pine trees and other brush in the wedge. These activities were observed by Dr. Dickinson, Karen Tripp and the Skillins. Even Mrs. Gill admitted that she observed the Palmers maintaining the wedge just like the Gills maintained their own yard. The Bradstreets kept a picnic table near the wedge. Neal Bradstreet use to take afternoon naps in this area. At one time, there was a hammock in this area. The families would cross the wedge to access the water to the east of the wedge on the Palmer property. The Palmers and Bradstreets would walk across or in the area of the wedge to each other's property on a regular basis. The wedge is not conducive to construction of permanent structures due to its small size and the presence of trees.

The wedge is visible from Palmer Point Road. Both families posted their side of the wedge to keep others out of the area and off their properties. Both families believed that the common boundary was a row of trees in the wedge. Clammers trespassed to the east of the wedge to access the clam-flats from the Palmers' property. Both families

---

[9] The plaintiffs' expert measured the wedge to be 3.8 feet and the defendants' expert measured the wedge to be 4.1 feet, a difference of a few inches that was characterized as insignificant by defendants' expert.

chased away clammers and others who attempted to access the Bay through or along the wedge. The embankment is steep on the ocean side of the wedge, and the waterfront area is muddy with sea grass. Michael Palmer participated in petitions in 1998 and 2001 to keep clam diggers and other non-residents from using Palmer Point Road. Michael Palmer objected to clammers walking across the Palmer property, the wedge and Palmer Point Road. Lori Palmer called the police whenever clammers trespassed on Palmer property, the wedge or Palmer Point Road.

The Palmers and Bradstreets did not learn that "the wedge" – the property they had been maintaining as their own for decades – even existed until 2008. The wedge was not conveyed out in 1964 when Richard Learnard transferred the Bradstreet property to Mary Ann and Neal Bradstreet.[10] At the time of his death, Learnard continued to own the wedge and the land crossed by Palmer Point Road. Record title of the wedge and Palmer Point Road passed to certain heirs of Richard Learnard through his residuary estate. Neither the Palmers nor the Bradstreets sought permission of Richard Learnard or his heirs to use and maintain the wedge. They used and maintained the wedge, mistakenly believing that they owned it.

In 1993 Ronald Palmer commissioned a survey of the Palmer property (which had nothing to do with the wedge). The 1993 survey did not show the Bradstreet boundary or the wedge. The 1993 survey disclosed the existence of a pin ("IPF") at the southeast corner of the Palmer property at the approximate high water mark. Prior to 2008,

---

[10] Defendants' Ex. 11 discloses that Learnard was preparing a deed to transfer property to the Bradstreets. There is a discussion between Learnard and Walter Palmer concerning the proposed line for the Bradstreet property. Learnard expressed concern about encroaching Palmers' property. There was no discussion of a wedge or Learnard retaining property between the Bradstreets and Palmers' property. Even if Ex. 11 were admitted it adds nothing to the court's analysis of ownership of the wedge.

9

Michael Palmer believed the pin in the ground just over the embankment below the last oak tree in the wedge – which is labeled IPF on the 1993 survey – marked the boundary between the Palmer property and the Bradstreet property.

In 2003, Ranjit and Gurdarshan Gill purchased their property at 3 Palmer Point Road, which is located behind the Palmers' property. The former owner, David Dickinson, owned that property for 21 years. Dr. Dickinson never believed he had any rights to access the water or to cross the Palmer or Bradstreet properties and always assumed that the area near the Palmer and Bradstreet boundary belonged to them. Dr. Dickinson accessed the water across the Palmer property and left his children's rowboat there with Michael Palmer's permission.[11] When Dr. Dickinson sold his house to the Gills, he made it clear to the Gills that there was no right of way to the water from Palmer Point Road.

After the Gills purchased their property, the Gills made occasional use of the area between the Palmer and Bradstreet properties in the vicinity of the wedge. After the argument in 2008, Mr. Palmer told the Gills that they could not enter his property. Up to this point, the Palmers and Gills had been friends, visiting in each other's homes as frequently as once a week. As a result of the argument, the Gills investigated the legal descriptions in the parties' deeds and, with the benefit of a survey, informed the Palmers that there was a gap of land between the Palmer and Bradstreet properties that had never been conveyed, thereafter being known as "the wedge."

The Palmers engaged Haskell and Owens to update the 1993 survey of their property to determine whether a gap existed between the deeded legal description of the

---

[11] Dr. Dickinson even offered to purchase from Michael Palmer an easement across the Palmer property for water access, but they could not reach an agreement on price.

10

Palmer property and the Bradstreet property. The updated survey disclosed the gap. The parties now agree on the metes and bounds of the gap as a result of the two surveyors agreeing on the points for the wedge. The wedge is shown on the Boundary Survey on Palmer Point Road for Michael Palmer by Owen and Haskell, dated September 9, 2008 (the 2008 Haskell Plan). The wedge is also shown on defendants' plan, titled Retracement Survey of Palmer Point Road by Mann Associates, Inc., dated October 20, 2009 (the 2009 Mann Plan). Mr. Skillins hired Mann Associates to perform the Retracement Survey to determine who owned Palmer Point Road. By this point, the Skillins and Gills had become friends and joined in their dispute against the Palmers.

With regard to the wedge, the gap in the legal descriptions starts at the curve of Palmer Point Road and extends to the high water line of Casco Bay. Plaintiffs' surveyor, John Schwanda of Owens & Haskell, and Defendants' surveyor, John Mann, agreed on the boundaries of the wedge and marked the boundaries of the wedge with surveyor stakes and flagging in accordance with their respective surveys in September 2013. Notwithstanding the surveys, the Palmers and Mrs. Bradstreet assert they own this property through adverse possession dating back to at least 1964.

The Gills, who failed to convince the Town of Freeport to assert a public right of way down the Palmer Point Road, formed a road association in late 2010. The Road Association included only the Gills and Skillins, and one of the first acts of the Association after obtaining release deeds from some of Learnard's heirs, was to convey to themselves an easement to the wedge and Palmer Point Road. The Palmers on their own behalf and on behalf of Mrs. Bradstreet also obtained release deeds to the wedge and

11

Palmer Point Road from the other half of the Learnard heirs, nevertheless still claiming ownership of the wedge through adverse possession.

2.     Retaining Wall and Right of Way

Just north of the wedge, Palmer Point Road curves and crosses the Palmer property, Brenda and John Skillins' property, and ends at Karen Tripp's property. The Skillins and Ms. Tripp have a deeded right of way to traverse the Palmer property via this gravel drive to access their own properties, the existence of which is not in dispute. The location of the right of way on the Palmer property, however, is described only in the 1983 Tripp deed and therein only by a centerline with an undefined width. The Palmers began constructing a retaining wall on their property along the northern edge of the gravel drive in 2001 and completed the wall in 2005. The Skillins claim in this lawsuit that the Palmers moved the right of way and that the retaining wall encroaches on their right of way. The Palmers did not move the right of way. Over time, the gravel drive has shifted as the result of regular vehicular use. The Palmers installed their retaining wall along the grassy edge of the gravel drive existing in 2001.

## DISCUSSION

The Palmers and Mrs. Bradstreet filed in RE-12-10 a Complaint with respect to the wedge shaped parcel for declaratory judgment in Count I and injunctive relief in Count II. The plaintiffs have dismissed Count III. The Gills and the Road Association filed a Counterclaim for declaratory judgment in Count I, injunctive relief in Count II, trespass in Count III, and injunctive relief in Count IV. In RE-12-117, the Skillins filed a Complaint with respect to a right of way for declaratory judgment in Count I, injunctive relief in Count II, damages for interference with right of way in Count III, and nuisance

in Count IV. The Palmers filed a counterclaim for declaratory judgment in Count I and injunctive relief in Count II. These claims were tried in a consolidated bench trial during the week of October 15, 2013.

1.    Adverse Possession and the Wedge

The plaintiffs claim title by adverse possession under both common law and statutory law. A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period. *See Weinstein v. Hurlbert*, 2012 ME 84, ¶ 8, 45 A. 3d 743, 745. These nine elements require "possession and use of the property for a twenty-year period that was actual, open, visible, notorious, hostile, under a claim of right, continuous, and exclusive." *Dombkowski v. Ferland*, 2006 ME 24, ¶ 10, 893 A. 2d 599. Maine statutory law for adverse possession modifies common law, stating that "[i]f a person takes possession of land by mistake as to the location of the true boundary line, the possessor's mistaken belief does not defeat a claim of adverse possession. 14 M.R.S. § 810-A.

A claimant shows "actual" possession and use by "immediate occupancy and physical control" of the property. *Streiffel v. Charles-Keyt-Leaman P'ship*, 1999 ME 111, ¶ 6, 733 A. 2d 984 (upholding finding of actual use where claimant used parcel in "typically residential manner that included recreation, storage and gardening"). The elements "open," "visible," and "notorious" require use without attempted concealment, that others can see, and that others would reasonably communicate to a true owner. *Id.* ¶ 11-12 (upholding finding of open, visible, and notorious where neighbors could clearly

13

observe possession and use). "Hostile" means simply that claimants did not have the true owner's permission to use the property; and "claim of right" means the claimants were in possession as owners with intent to claim ownership. *Id.* at ¶ 13-14 (upholding finding of hostile and claim of right where claimant did not have permission and "intentionally possessed and used parcel as though they owned it"). "Continuous" use and possession without interruption requires only the kind of occupancy an average owner would make; and "exclusive" means the claimants did not share use of possession with the true owner or the public. *Id.* at ¶ 15-16.

To establish adverse possession, the claimants must show that their use and enjoyment of the property has been consistent "in kind and degree as the use and enjoyment to be expected of the average owner of such property." *Maine Gravel Services, Inc. v. Haining*, 1998 ME 18, ¶ 3, 704 A. 2d 417 (quoting *Howe v. Natale*, 451 A. 2d 1198, 1200 (Me. 1982); see also *Gay v. Dube*, 2012 ME 30, ¶ 14, 39 A. 3d 52 (upholding finding of adverse possession where claimant and predecessors in title treated parcel as a contiguous part of their property for over forty years).

A claim of adverse possession is a mixed question of law and fact. Whether plaintiffs' use of the wedge constitutes adverse possession is an issue of law for the court to decide. *Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A. 2d 234. The elements of adverse possession must be established by clear proof of acts and conduct sufficient to put a person of ordinary prudence, and particularly the owner, on notice that the land in question is actually, visibly and exclusively held by a claimant "in antagonistic purpose." *Weeks v. Krysa*, 955 A. 2d at 238, ¶ 13 (citation and quotation marks omitted). Whether the acts of the plaintiffs are sufficient to establish adverse possession "can only be

14

resolved in light of the nature of the land, the uses to which it can be put, its surroundings and various other circumstances." *Id.*

This court concludes that the plaintiffs have established by clear proof of acts and conduct sufficient to put a person of ordinary prudence, and particularly Learnard and his heirs, on notice that the land in question is actually, visibly and exclusively held by the plaintiffs as claimants with an antagonistic purpose. Considering the nature of the land and the limited uses to which it can be put, its surroundings and various other circumstances, the court finds that the plaintiffs have clearly established possession and use of the wedge for a twenty plus year period that was actual, open, visible, notorious, hostile, under a claim of right, continuous and exclusive. That they were mistaken as to the location of the true boundary line and did not know that there was a gap until 2008 does not defeat their claim for adverse possession. The plaintiffs and the Palmers' predecessors in title treated the wedge as a contiguous part of their property for over twenty years.

The Palmers and the Bradstreets have intentionally maintained the wedge as true owners and treated it as a contiguous part of their property since the 1960s. They have mowed the lawn, raked leaves, cleared brush and otherwise maintained the wedge in a manner typical of seasonal, residential owners. The wedge is only 3.8 feet wide at the water's edge and has a mature tree blocking access to the water, making it virtually impassable without crossing onto either the Palmer or Bradstreet deeded property, as clammers have done from time to time. Additionally, there are other large oak trees in the wedge leaving at most one foot to travel. Plaintiffs' use and possession of the wedge is consistent with their ownership of the adjoining parcels. Plaintiffs have also never sought

15

to conceal their possession or use. They have posted the wedge with no trespassing signs and replaced those signs as they were torn down by trespassers. They have chased others, including clammers, from their property. The plaintiffs did not seek permission to use the parcel because they thought they owned it, that is until the surveys performed in 2008 and 2009 showed otherwise. When others used the wedge or accessed the bay over the Palmers' property, they did so with express or implied permission of the Palmers, as evidenced by the testimony of neighbors such as Dr. Dickinson. The plaintiffs have used the wedge in such a manner, without interruption, since acquiring their respective parcels well over twenty years ago.

Defendants contend that Walter Palmer knew that the property lines were consistent with the property lines disclosed first on the 1994 and then on the 2008 Owen Haskell Plan. Def.'s Proposed Judgment at 9. For this argument, defendants rely on Def.'s Ex. 11, marked for identification but judgment reserved at trial on admissibility. Def.'s Ex. 11 consists of correspondence and sketches exchanged between Walter Palmer and Richard Learnard between 1964 and 1969 concerning the location of the boundary line for the Bradstreet property. Learnard was selling the Bradstreets their waterfront property and in drawing the line for the Bradstreet property, Learnard did not want to encroach on the Palmers' property. There is no discussion of Learnard retaining any property or of any gap or wedge in the property between the Bradstreets and the Palmers. Even if Def.'s Ex. 11 were admitted, it is not evidence that Learnard left a gap between the Palmer and Bradstreet property. The letters contained in Def.'s Ex. 11 state only that Learnard did not want to encroach on the Palmer property. The drawings or maps that appear in Def.'s Ex. 11 do not add anything to the discussion of this issue.

16

2. The Retaining Wall and the Right of Way

Between 2001 and 2005, the Palmers built a concrete block retaining wall to protect the septic system that the Palmers updated when they renovated their cottage. The wall runs along the westerly line of the Skillins' property and then curves westerly along the shore side of the Palmer property and then northerly in the direction of the Palmers' driveway on Palmer Point Road. When citing the wall, Michael Palmer followed the inside curve of the gravel drive and placed the wall inland from the gravel drive existing in 2001. The Palmers did not move the gravel drive before, during or after construction of the retaining wall. However, the Palmers did not take into consideration the Tripp deed description of the right of way but followed the existing gravel way in 2001 in constructing the wall. The photographs depicting the retaining wall show the wall located on the grassy area along side the gravel way in the early 2000's. See Plt.'s 30-31.[12]

The Skillins 1982 deed conveys a "right of way, now existing, to be used in common with others over land formerly of Walter S. Palmer and along the bank for pedestrians and vehicles to the lot hereby conveyed." This right of way crosses the Palmers' property along the bank to the Skillins and Tripp property. Although the location of the Skillins' right of way on the face of the earth was not described in their deed, the 1983 Tripp deed described the centerline of their right of way, which otherwise reads like the Skillins' right of way. There is only a single right of way: the same right of way is described in the Skillins and Tripp deed. Although the Skillins have not demonstrated that the right of way granted by their 1982 deed gives them a right to cross

---

[12] Plt.'s 30 contains six photographs. Plt.'s 31 contains seven photographs.

17

the waterfront side of the Palmer property at a particular place on the earth, there is only one right of way.

Maine law provides that:

Property, although subject to an easement, remains within the ownership and control of the owner of the servient estate. That ownership and control is subject only to the restriction that the owner of the servient estate not "materially impair" or "unreasonably interfere with" the use of the right-of-way that is allowed by the easement.

*Flaherty v. Muther*, 2013 ME 39, ¶ 21, 65 A. 3d 1209, 1215 (citations omitted). The Skillins have established the location of the right of way but they have not shown any unreasonable interference with their use of the right of way. They also have failed to demonstrate any actual or compensatory damages with respect to the right of way. They have shown that the wall leans into the portion of the gravel way. The court uses the term "gravel way" to distinguish from the deeded "right of way". The gravel way is the way that exists today and existed before the Palmers installed their retaining wall and along which the retaining wall has been built.

There was no survey of the right of way until 1983, even though it existed as early as 1958 when Walter Stillman Palmer conveyed the right of way easement to Alfred M. Palmer and Lester E. Palmer. Howard Babbidge was the first to survey the location of the gravel driveway in 1983. The Tripp deed description is based upon Babbidge's plan titled "R/W Survey for Lester Palmer" prepared by Howard F. Babbidge, date June 3, 1983. According to the testimony of John Schwanda of Owen Haskell, Inc. and John Mann of Mann Associates, the only evidence of the location of the right of way was the location of the gravel driveway across the Palmer property in the Babbidge survey. The Babbidge centerline described in the Tripp deed is the best record evidence of the right of

18

way. The centerline is shown in the Babbidge plan, the 2008 Owen Haskell plan and the 2009 Mann plan.

Although the centerline may be located on the face of the earth, that does not provide the width of the right of way. When the width of the easement is not stated, the width " will be held to be of a width suitable and convenient for the ordinary uses of free passage to and from grantee's land. And if the particular object of the grant is stated, the width must be suitable and convenient, with reference to that object." *Willband v. Knox County Grain Co.*, 128 Me, 62, 71, 145 A. 405, 406 (Me. 1929)(citations and internal quotations omitted). Furthermore, "an easement in general terms is limited to a use . . . as little burdensome to the servient estate as possible for the use contemplated." *Mill Pond Condo Ass'n v. Manalio*, 2005 ME 135, ¶ 6, 910 A. 2d 392. Here, the purpose of the right of way is to be used in common with others and along the bank of Casco Bay for pedestrians and vehicles to access the Skillins and Tripp property. Thus, the right of way had to be at least wide enough for pedestrians and vehicles.

The Babbidge plan shows the width of the right of way to be ten feet. In calculating how close the Tripp centerline was to the retaining wall, Mann, whose testimony the court accepts, considered that the right of way description did not provide a width, applied the Babbidge minimum width, applied the Tripp deed centerline, and concluded that the closest point of the centerline to the wall is three feet, and near the stairway it may even be less than three feet. The surveys confirm that the retaining wall encroaches on the right of way. Furthermore, the retaining wall is in a deteriorating condition and, in places, leans into the gravel way. The Skillins failed to demonstrate that the retaining wall interferes with their ability to bring their boat to their property or

19

emergency vehicles access to their lot. The Skillins demonstrated that the wall leans into the gravel way and that they are "driving wide" to avoid hitting the wall with their rear view mirror. Over time it is possible that the leaning wall and their "driving wide" will inevitably push the gravel way even closer to Casco Bay.

The court observes that once an easement is granted, it cannot be changed unless both parties consent or a document granting an easement reserves the power to relocate. *See Davis v. Bruk*, 411 A. 2d 660, 664-65 (Me. 1990). There was no reservation of the right to relocate and the parties have not expressly agreed to relocate the easement. The right of way remains as described by Babbidge in 1983. It is only the gravel way that has moved or relocated. The Palmers argue that the defendants acquiesced to the location of the right of way where the gravel way is and they acquiesced to the location of the retaining wall because the wall was completed in 2005 and the defendants did not bring their claims until March 20, 2012, more than six years after the wall was built and any change in the gravel way's location occurred. *See, e.g.*, *Henning v. Neisz*, 148 Ind.App. 576, 268 N.E. 2d 310 (1971). However, the gravel way had changed before the Palmers constructed their wall beginning in 2001, and the right of way once established could not be relocated.

The Skillins and Gills are able to drive their vehicles on Palmer Point Road and across the shorefront side of the Palmer property, notwithstanding the presence of the retaining wall.[13] They have not demonstrated any unreasonable interference with their right of way or easement. They have also failed to demonstrate any damages as a result

---

[13] The court rejects any claims based on the placement of white rocks on the edge of the right of way. Historically, Walter Palmer first put the rocks their to protect the original septic system. The evidence at trial is that the rocks were removed a few years ago and are no longer an issue.

20

of the retaining wall. There is no evidence that the Palmers did anything to move the gravel. Both parties' experts agreed that the gravel way shifted towards Casco Bay over time between 1983 and 2008 but cannot explain how or when it shifted. However, they agreed that travel ways or gravel right of ways change over time. This court concludes that it is just as likely that the shifting of the gravel way was occasioned by vehicles traveling over the right of way. It is also probable that in an earlier time period (long before the right of was located on the face of the earth by the Tripp deed) the gravel way shifted towards the water because of white rocks placed by Walter Palmer to mark the leech field forced Lester Palmer and Alfred Palmer to drive closer to the ocean to avoid the leech field. This was all before 1982, when the Skillins purchased their property and well before 2001 and 2005 when the Palmers built their retaining wall.

Although the Skillins have not shown that they have suffered any actual or compensatory damages as a result of the retaining wall encroaching in certain places by as much as three feet into their right of way, they have shown that the retaining wall in its deteriorating condition leans into the gravel way and causes the to "drive wide" to avoid hitting their side mirrors on their vehicle. Therefore, the court hereby enjoins the Palmers from any future encroaching in the right of way and orders the Palmers to rebuild within 90 days any portion of the retaining wall that leans into the gravel way. Further the court enjoins the Palmers from to not build a new retaining wall within five feet from the centerline described in the Tripp deed and as reflected in the Retracement Survey. See Def.'s Ex. 7.

The Gills, Skillins and the Association have failed to demonstrate any actual or compensatory damages related to encroachment of the Palmers' retaining wall into the Palmer Point Road near the Palmers' driveway. The wall does not unreasonably interfere with travel on Palmer Point Road. Here the minor encroachment of the retaining wall in this location does not outweigh the harm that would be inflicted by ordering the Palmers to relocate their retaining wall as the defendants seek in their counterclaim.

## DECISION

It is hereby ORDERED, ADJUDGES and DECREED as follows:

1. Judgment to the plaintiffs Michael Palmer, Lori Palmer, and Mary Ann Bradstreet, as Trustee of the Revocable Indenture of Trust dated January 14, 2000 as amended, on Counts I of their First Amended Complaint. The Palmers and the Revocable Indenture of Trust of Mary Ann Bradstreet own the wedge by adverse possession. The Palmers and Mrs. Bradstreet own to the center of the wedge, as that term is defined in this decision under the doctrine of adverse possession.

2. The defendants' easement to the wedge is declared null and void. To the extent the deeds executed by Mount Washington Observatory (Book 28220, Page 257 and Book 28241, Page 228) purport to convey titled to the wedge to the Palmer Point Road Association, the conveyances of title to the wedge are of no force or effect. The Palmer Point Road Association is hereby directed to take whatever steps are necessary to release any recorded interests in the wedge to the Plaintiffs.

22

3. Any easement rights over the wedge purportedly conveyed by the Palmer Point Association to Ranjit and Gurdarshan Gill (Book 28266, Page 19) and Brenda and John Skillin (Book 28284, Page 22) are of no force and effect. The Gills and Skillins are directed to take whatever steps are necessary to release any recorded interests they have in the wedge by virtue of those easements.

4. Judgment is also entered in favor of the plaintiffs on Count II of their First Amended Complaint. Defendants are hereby enjoined from entering the wedge without plaintiffs' permission.

5. Count III of the First Amended Complaint is dismissed with prejudice.

6. Judgment for the Gills and the Palmer Point Road Association on Counts III and IV of their counterclaim. The Palmers' retaining wall encroaches on land of the Association but does not unreasonably interfere with the rights of the Gills or the Association. There are no actual or compensatory damages as a result of the trespass. The Palmers are not ordered to remove the retaining wall; however, they are hereby enjoined from rebuilding their wall or relocating their wall so that it encroaches on the rights of the Gills or the Association.

7. Judgment for the Skillins on Counts I, II and III of their Second Amended Complaint. The Skillins' right of way is defined by the Tripp deed centerline and as shown on a survey titled Retracement Survey of Palmer Point Road by Mann Associates, Inc., dated October 30, 2009 and recorded in the Cumberland County Registry of Deeds in Plan 210, Book 375 and as further

23

shown in Def.'s Ex. 7. The Palmers are hereby enjoined from rebuilding or relocating their retaining wall so that it encroaches on the Skillins' right of way. The Palmers are further ordered to relocate within 90 days of this judgment that portion of the existing retaining wall that leans into the gravel way. Count IV of the Complaint is dismissed with prejudice.

8. Judgment is entered in the amount of $1,250, for that portion of the cost of the Mann Associates survey performed in connection with the establishment of the Skillins' right of way.

9. The Palmers' counterclaims to the Skillins Second Amended Complaint are denied and dismissed with prejudice.

Date: April 1, 2014

Joyce A. Wheeler, Justice

24

STATE OF MAINE
CUMBERLAND ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO.    RE-12-10

MICHAEL PALMER, LORI PALMER and
MARY ANN BRADSTREET,

        Plaintiffs

v.

RANJIT S. GILL, GURDARSHAN GILL,
PALMER POINT ROAD ASSOCIATION and
CROTCHED MOUNTAIN FOUNDATION,

        Defendants

BRENDA F. SKILLIN and JOHN W. SKILLIN,

        Plaintiffs

v.

LORI PALMER and MICHAEL PALMER,

        Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**STIPULATED JUDGMENT AS TO
COUNT III OF MICHAEL
PALMER, LORI PALMER AND
MARY ANN BRADSTREET'S
FIRST AMENDED COMPLAINT
AND COUNTS I AND II OF
RANJIT S. GILL AND
GURDARSHAN GILL'S
COUNTERCLAIM**

STATE OF MAINE
Cumberland ss. Clerk's Office

APR 02 2014

RECEIVED

On October 15, 2013, Plaintiffs Michael Palmer, Lori Palmer and Mary Ann Bradstreet

and Defendants Ranjit S. Gill, Gurdarshan Gill and the Palmer Point Road Association, by and

through their undersigned attorneys, stipulated to the entry of a Judgment[1] on Count III of the

Plaintiffs' First Amended Complaint and on Counts I and II of Defendants' Counterclaim.

---

[1] This Stipulated Judgment shall have no effect upon the claims filed in *Brenda F. Skillin et al. v. Michael Palmer et al.*, which was originally docketed as RE-12-117 and later consolidated into the above-captioned proceeding.

1.    On or about January 13, 2012, Plaintiffs Michael Palmer, Lori Palmer and Mary Ann Bradstreet commenced this action against Defendants Ranjit S. Gill, Gurdarshan Gill, the Palmer Point Road Association and the Crotched Mountain Foundation.

2.    Attorney David S. Sherman, Jr. represents Plaintiffs Michael Palmer, Lori Palmer and Mary Ann Bradstreet (collectively, "Plaintiffs"). Attorney Jonathan M. Davis represents Defendants Ranjit S. Gill, Gurdarshan Gill and the Palmer Point Road Association (collectively, "Defendants"). Although the Crotched Mountain Foundation has been served, it has not entered an appearance in this action.

3.    Pursuant to 14 M.R.S. § 2401(3), the Court finds that the below-named parties were served in accordance with the applicable provisions of the Maine Rules of Civil Procedure:

| Name/Address of Party | Counsel of Record | Method/Date of Service |
|---|---|---|
| **Plaintiffs** | | |
| Michael Palmer<br>110 Libby Road<br>Pownal, ME 04069 | David S. Sherman, Jr.<br>Drummond Woodsum<br>84 Marginal Way<br>Portland, ME 04101 | n/a |
| Lori Palmer<br>110 Libby Road<br>Pownal, ME 04069 | David S. Sherman, Jr. | n/a |
| Mary Ann Bradstreet<br>91 North Main Street<br>East Longmeadow, MA 01028 | David S. Sherman, Jr. | n/a |
| **Defendants** | | |
| Ranjit S. Gill<br>3 Palmer Point Road<br>Freeport, ME 04032 | Jonathan M. Davis<br>Powers & French, P.A.<br>209 Main Street<br>Freeport, ME 04032 | Personally served on<br>January 19, 2012 |
| Gurdarshan Gill<br>3 Palmer Point Road<br>Freeport, ME 04032 | Jonathan M. Davis | Personally served on<br>January 19, 2012 |

2

| Palmer Point Road Association c/o Ranjit S. Gill 3 Palmer Point Road Freeport, ME 04032 | Jonathan M. Davis | Personally served on January 19, 2012 |
|---|---|---|

4. This Stipulated Judgment affects title to two parcels of real estate as follows:

a. Real property owned by Plaintiffs Michael Palmer and Lori Palmer (the "Palmers") located at 8 Palmer Point Road in Freeport, Maine, as described in a deed dated November 28, 2005 and recorded in the Cumberland County Registry of Deeds (the "Registry") in Book 23462, Page 2 (the "Palmer Property").

b. Real property owned by Defendants Ranjit S. Gill and Gurdarshan Gill (the "Gills") located at 3 Palmer Point Road in Freeport, as described in a deed dated July 11, 2003 and recorded in the Registry in Book 19794, Page 314 (the "Gill Property").

5. In Count III of the Plaintiffs' First Amended Complaint, the Palmers assert that the Gills do not have the right to cross a driveway located in the northerly portion of the Palmer Property (the "Rear Driveway").

6. The Rear Driveway is depicted in a 2008 survey and is referred to as the "Apparent Right of Way" in the excerpt from the 2008 survey below:

3



7.     As set forth in the above survey excerpt, the northern boundary of the Palmer Property, which abuts the Gill Property, is 71.96 feet in length with a bearing of N 84°42'05" W (the "Palmer Northern Boundary").

8.     In Counts I and II of Defendants' Counterclaim, the Gills assert that they have a right to use the Rear Driveway and to traverse the Palmer Northern Boundary to access the Gill Property.

WHEREFORE, the Court hereby orders as follows:

A.     Judgment is entered in favor of Defendants Ranjit S. Gill and Gurdarshan Gill against Plaintiffs Michael Palmer and Lori Palmer on Count III of Plaintiffs' First Amended Complaint and on Counts I and II of Defendant Ranjit S. Gill and Gurdarshan Gill's First Amended Counterclaim.

B.     Defendants Ranjit S. Gill, Gurdarshan Gill and the Palmer Point Road Association and their heirs and successors have the right to use the Rear Driveway, as described in Plaintiffs' First Amended Complaint and in paragraph

4

6 above and any land between the Rear Driveway and the southerly line of the Gill Property, for pedestrian and vehicular access for the benefit of the Gill Property.

C.  This Judgment shall be binding upon Plaintiffs Michael Palmer and Lori Palmer and their heirs, successors and assigns.

D.  Defendants shall record this Judgment in the Cumberland County Registry of Deeds.

E.  The Clerk shall enter this Stipulated Judgment on the docket by reference at the specific direction of the court pursuant to M.R.Civ.P. 79(a).

DATED: ___1|7___, 2014

_____
The Hon. Joyce Wheeler
Justice, Maine Superior Court

5