STATE OF MAINE
SOMERSET, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-32

JAMES E. TYVOLL, ANGELA J. TYVOLL,
and DALE F. THISTLE, as Trustees
of "TYVOLL FAMILY REVOCABLE TRUST
AGREEMENT OF DECEMBER 19, 2014;"
PAUL H. BEAULIEU, as TRUSTEE OF THE PAUL H.
BEAULIEU REVOCABLE TRUST OF 1999,
and MARJORIE BEAULIEU,
as TRUSTEE OF THE MARJORIE
BEAULIEU REVOCABLE TRUST OF 1999,

       Plaintiffs

v.

**DECISION**

JASON K. HUGHES, PRESIDENT AND
ROAD COMMISSIONER, ELM POND
STATUTORY ROAD ASSOCIATION,

       Defendant

       James E. Tyvoll, Trustee, et al., have brought an amended complaint for a declaratory judgment under the provisions of 14 M.R.S. § 5951 *et seq.*, in their capacity as Trustees of various Family Revocable Trusts, against Jason Hughes as President and Road Commissioner of Elm Pond Statutory Road Association. ("Association"). Plaintiffs ask the court to find and declare that the west half of T4-R16 is not a municipality but lies in an unorganized territory; that the Association is unlawful and not supported by State laws; that the defendant is without statutory authority to place a lien on property of the plaintiffs, that the lien

placed by defendant against the deeds of the plaintiffs, as Trustees, are an unlawful slander of title and seek an injunction for the court to order the defendant to remove such liens, refrain from placing any further liens against property of the plaintiffs, and to pay all plaintiffs' costs and fees.

Defendant has brought a motion for summary judgment. Defendant asserts that there are no genuine issues as to any material fact and the defendant is entitled to judgment as a matter of law based upon the pleadings, the statement of material facts, and the affidavits attached.

In Somerset Superior Court civil action CV-13-42, *Kenneth Rogers, et al. v. James Tyvoll, et al.*, plaintiffs, as real estate owners in the subdivision of Township 4, Range 16, known as Elm Stream Township, brought an action against James E. Tyvoll and others for declaratory judgment, trespass, and injunctive relief. After trial, the court determined that the roads appearing on the Plan titled "A Proposed Division of Land of West Half of Township 4, Range 16 for Hughes Lumber Company, Inc., Somerset County, State of Maine, September 30, 1989, prepared by A.B. Sturgeon, Inc., Surveyors and Developers, 95 Harlow Street, Bangor, Maine, by John B. Cahoon, Registered Land Surveyor number 324, as recorded in Somerset County Registry of Deeds, September 27, 1989, and recorded in Plan B-89, page 165," are roads to which each property owner, as recipient of a deed for a lot of land described by specific reference to said Plan, "has full rights and access

2

to displayed roads as a private easement accompanying and part of their deed(s)." That decision dated December 22, 2015, gives rise to the present litigation regarding the responsibility for the service and maintenance of the roads in question.

In their complaint, the plaintiffs assert that a road association was formed in 2010 in accordance with 23 M.R.S. §3101-3104, the Private Way Act, ("Act"), known as the Elm Pond Statutory Road Association. The plaintiffs declined openly and in person at a meeting called for that purpose to join as members. Plaintiffs complain that a statement of annual fees to maintain roads has been mailed to the plaintiffs in the years subsequent to the formation of the organization and that they have refused to pay, as they assert they are not members of this "statutory" road association.

In support of their complaint, the plaintiffs assert that a "statutory" road association only applies to municipal road associations where management is under the authority of a municipality, not an unorganized territory such as Elm Stream Township which is managed by the State and the County. Plaintiffs further argue that the statutory road association is within the purview of the laws of "private ways", cited at 23 M.R.S. §§ 3101. (1)(A).

In further argument of their position, the plaintiffs assert that each and every resident in the subdivision has placed their forest land under the Tree Growth Tax

3

Law as found in 36 M.R.S. § 571 *et seq.* ("Tree Growth"). They argue the Private Way statute does not authorize the creation of a statutory road association as distinct from a voluntary road association and therefore, the actions by the president and road commissioner of this association in assessing a lien and in attempting to exact road maintenance fees is unlawful.

The defendant argues that the present Association, formed in 2010, is a statutory road association formed pursuant to 23 M.R.S. § 3101 *et seq.*, and that the plaintiffs own parcels of land that benefit by the roads governed by the statutory road association. Defendant argues the plaintiffs' declaration to join or not join as members is not relevant.

The defendant admits that an "Affidavit and Notice of Nonpayment" for annual assessments, as allowed under 23 M.R.S. § 3104, was filed against the plaintiffs in the Somerset County Registry of Deeds in 2012. Defendant denies that any such filing was in contradiction of State law and by statute, such filing is not a slander of title, citing 23 M.R.S. §3104.

The agreed facts as determined by the previous litigation are recited below. See Rogers, et al. v. Tyvoll, et al., Somerset Superior Court, CV-13-42.

Both plaintiffs and defendants own property in the development known as Elm Stream Township. The development is a gated residential subdivision accessible off the Golden Road. It was first divided in 1989 by the Hughes

4

Lumber Company who owned the entire western half of Elm Stream Township at that time. In 1989, Hughes Lumber Company recorded a Plan in the Somerset County Registry of Deeds, which is referred to as "the Hughes Plan" or "the Sturgeon Plan" depicting a series of road and ways over which all of the parties who own lots in the Elm Stream development had easement rights as heretofore found by this court. All parties in this matter own property that is benefitted by the roads and ways shown on the Plan. Such roads are the only access to the land of the parties to this action.

The roads had been maintained by individuals and by a voluntary road association prior to the organization of the Association in August of 2010. It is a statutory road association. The plaintiffs have not paid any annual assessments for road maintenance since that date. At a meeting of the Association in 2012, the members voted to authorize the recording of liens against any owners pursuant to 23 M.R.S. §3104 if assessments remained unpaid after thirty day notices have been sent out. On October 10, 2012, the treasurer of the Association signed and recorded in the Somerset County Registry of Deeds eight separate "Affidavits of Nonpayment" against several lot owners on behalf of the Elm Pond Statutory Road Association. James and Angela Tyvoll, and Marjorie and Paul Beaulieu were named in two affidavits.

5

In defendant's motion for summary judgment, he argues there are three issues present before this court in determining a declaration of the status of law under the facts of this case. First, can a statutory road association, formed pursuant to 23 M.R.S. § 3101 *et seq.*, be applied to private roads that are located in the unorganized territories of Maine or is the law limited to use only in organized municipalities? Second, does the exemption in the Private Ways Act for roads that are constructed or primarily used for commercial or forest management purposes apply to residential properties that have forest management plans in place and are taxed under a reduced assessment for tree growth? Third, should the plaintiffs be liable for payment of the annual assessment for road repairs imposed by the Statutory Road Association, and, if so, is the Association's recording of an affidavit of nonpayment against the plaintiffs valid and enforceable?

When four or more parcels of land are benefitted by a "private road, private way or bridge" as an easement or by fee ownership of the private road, the Private Ways Act, 23 M.R.S. § 3101-3104, provides a process whereby the owners of three or more of the parcels may make application to a notary public to call a meeting. Notice of the meeting and the business to be conducted therein is sent to owners of all parcels benefitted by the "private road, private way or bridge" thirty days before the date of the meeting. § 3101(2). Each parcel of land benefitted by a "private road, private way or bridge" represents one vote. § 3101(4). A road

association through its commissioner or board may address present and future repair and maintenance of a "private road, private way or bridge" as authorized by the owners at the meetings. § 3101(4-A). The commissioner or board chosen under § 3101 with respect to a "private road, private way or bridge," has powers as a road commissioner and may initiate a civil action brought in the name of the road association if any owner neglects to provide its share of labor, materials, or money. §3102. The commissioner or board may cause to be recorded in the county's registry of deeds a notice of claim for money owed pursuant to §§ 3101, 3102, or 3103 that is more than ninety days delinquent. The recording of such notice does not constitute slander of title. §3104 Before recording such notice or service of process, a commissioner shall provide the owner with written notice of the intended action if the debt is not paid within twenty days of the date the written notice. The written notice to cure must be at least thirty days before the recording of the notice of claim of service of process or collection in a civil action. § 3104.

Plaintiffs challenge the validity of the creation of this Association in two ways. First of all, they argue that the roads in question constitute a "private way" which is defined in 23 M.R.S. § 3101(1)(A) as a public easement as defined in § 3021(2). That citation contains a definition that "public easement" means an easement held by a municipality for purposes of public access to land or water not otherwise connected to a public way and includes all rights enjoyed by the public

with respect to private ways created by statute prior to July 29, 1976. Thus, the plaintiffs assert that the Statutory Road Association in question can only be created in a "municipality."

The court notes that in 23 M.R.S. § 3101 the legislature has specifically stated a private road, private way, or bridge, as separate terms, obviously for a reason. That reason is that a private road is not subject to the same definition as a "private way" as found in §3101(1)(A.) and is not therefore subject to public access to land and water.

In *Goudreau et al. v. Pine Springs Road & Water, LLC*, 2012 ME 70, 44 A.3d 315, this distinction is made clear under facts similar to those before this court. The issue was whether the plaintiffs were empowered to form a road association pursuant to 23 M.R.S. §§ 3101-3104. The facts were that a developer subdivided property, the plaintiffs purchased real estate from the developer in that subdivision, the subdivision contained roads that were privately owned. The plaintiffs created a statutory road association. The authority to do so depended on the question of the definition of "private road." The court held that "absent a relevant statutory definition to the contrary, we interpret the phrase 'private road' to mean precisely what it says in plain and ordinary language: a road that is privately owned." The court found that the facts of the case fell within the plain and ordinary meaning of a "private road" under § 3101 and the owner's parcels

were benefitted by easements over the private roads. The roads in the present case are "private roads" in a gated subdivision and not subject to public easement.

However, plaintiffs further argue that 23 M.R.S. § 3101(6) makes clear that the Public Way Act does not apply to a "private road, private way or bridge constructed or primarily used for commercial or forest management purposes." It appears undisputed that the vast majority, if not all, of the residents of the western half of Elm Stream Township have placed their woodlands in Tree Growth. Accordingly, then, the question is what is the effect of the use of the Tree Growth Act in the primary use of the "private roads" in question?

The Tree Growth Tax Law is found in 36 M.R.S. § 572 *et seq.* In its purpose, the legislature states that for many years the public policy for the State of Maine has been to tax all forest lands according to their productivity and to thereby encourage their operation on a sustained yearly basis. However, the legislature noted that that system did not always accomplish that objective but, "[i]nstead, it has caused inadequate taxation of some forest lands and excessive taxation and forfeiture of other forest lands." 36 M.R.S. § 572. The legislature goes on to state that "[i]t is declared to be the public policy of this State that the public interest would be best served by encouraging forest landowners to retain and improve their holdings of forest lands upon the tax rolls of the State and to promote better forest

management by appropriate tax measures in order <u>to protect this unique economic and recreational resource</u>." *Id.* (emphasis added).

The terms of the Tree Growth Tax Law are instructive as to the intent of the legislature. First of all, the definition of forest land means land used primarily for growth of trees to be harvested for commercial use with certain exceptions. 36 M.R.S. §§573(3). Further, land which would otherwise be included within this definition shall not be excluded because of multiple use for public recreation, statutory or governmental restrictions which prevent commercial harvesting of trees or require a primary use of land other than commercial harvesting, deed restrictions, restrictive covenants or organizational charters that prevent commercial harvesting of trees, or past or present use for mineral exploration. §573(3). One of the requirements for forest land to come within the tree growth tax law is that the landowner must have a forest management and harvest plan, which is a written document prepared by a license professional forester or a landowner that outlines activities to regenerate, improve, and harvest a standing crop of timber. § 573 (3-A). The provision goes on to define in §573(6-A) a residential structure, meaning a building used for human habitation as a seasonal or year-round residence. The Tree Growth Tax Law does not apply to any forest land containing less than ten acres. §574-B The land must be used primarily for growth of trees to be harvested for commercial use and taxed according to the Tree

Growth Tax Law as long as the landowner prepares and has certified a forest management and harvest plan with the municipal assessor or the State tax assessor and provides evidence of compliance with the plan every ten years. § 574-B (1)(2). Accordingly, a landowner with a parcel of land upon which trees susceptible to harvest are grown, who wishes to be taxed according to the Tree Growth Tax Law, rather than based upon an appraisal of highest and best use of the land and stumpage, may meet the requirements as above enumerated to obtain that advantage. There is no requirement that the land be commercially harvested at any particular time. The harvest plan simply provides the professional process by which the trees would be harvested if done so by the landowner.

The Tree Growth Tax Law relates to the landowner and not to commercial harvesters. Furthermore, the Tree Growth Tax Law relates to the trees in the forest standing on land and makes no reference to where this land is located. The only requirement is that the land must comprise of at least ten acres. Accordingly, persons who have ten or more acres in the back lot from their home, from their business, from their camp, from anywhere in the State of Maine, may comply with the Tree Growth Tax Law and take advantage of its assessment for tax purposes.

There is nothing in the Tree Growth Tax Law that effects the status of the roads in the Elm Pond subdivision. This is further borne out in the sworn testimony of the defendants in Rogers v. Tyvoll, CV-13-42, the plaintiffs in this

11

case, that they placed blockades in the roads to prevent others in the subdivision from having access to certain roads which gave rise to that suit because "they wish to restrict access to their lands by others. Hunting and other lawful activities have caused vandalism, waste, and most of all, disturb the peace and enjoyment of the owners who wish to be free to have privacy and to enjoy their property alone." In that case, the court found it to be undisputed that the defendants had suffered damage as a result of persons coming on their property without a right to do so. Further, each of the landowners in that litigation had a building on their land which was used as a full or part-time residence. Their concern for the unfettered use of the road as found by the court in its order was to protect their privacy in their residences. These lots are primarily seasonal recreational residences with the land subject to Tree Growth. There was no evidence in that or this case that they were disturbed by commercial forest harvesters, nor was there any evidence of commercial harvesting within the time period of the recording of the subdivision plan. No party to this litigation has testified that they have conducted or seen commercial harvesting on the private roads since 1989.[1]

---

[1] Some five days after the defendant filed his reply to plaintiff's opposition to the motion for summary judgment, plaintiff filed a "motion to amend plaintiff's response in opposition to defendant's motion for summary judgment" with an affidavit of a plaintiff with attachments. One attachment was an email message from a representative of the Maine Forest Service stating: "In Elm Stream Twp (T4 R16) between 2005 and 2015 (we are still collecting data for 2016) there were 14 active Forest Operations Notifications (FONs)." In her affidavit, plaintiff relates to an exhibit which purports to show that 97% of acreage in T4R16 is taxed as Tree Growth and that the number of acres in tree growth in the west half of T4 R16 is 8,980 out of a total acreage of 9,260. She further notes, most tellingly, "…the majority of landowners have sworn that their primary use of land is for growth of trees to be harvested for commercial use. Therefore, their use of the roads in West half of T4 R16 are used for that purpose as well." (emphasis supplied.)

12

The evidence was that the roads already existed in one form or another when the Hughes Plan was recorded and the deeds were drafted in accordance with the Plan. That fact, along with the known ownership by a lumber company might cause one to assume that these were built as "logging roads", roads with which any hunter or fisherman in the forest lands in the State of Maine are familiar. These roads are built specifically for the purpose of forest harvesting and specifically are as recited in the Private Ways Act as not subject to a road association. While it may be assumed they were constructed for that purpose, it is clear from the survey and creation of the Plan, its recording, and the multiple deeds of parcels making reference to the Plan for their description, that these roads are no longer to be primarily used, if once done, for commercial forest harvesting. (emphasis supplied) No evidence has been presented to this court in either this case or its predecessor that the roads are primarily used for commercial forest harvesting. No plaintiff in this matter has testified that the purpose of the Trust to which they have a responsibility has as its purpose the commercial harvesting of trees. In the absence of such evidence, there is no basis to find an exception to the Act and the court is satisfied that the mere utilization of the Tree Growth Act does not create that evidence.

Where the roads found on the Hughes Plan on the western half of the Elm Pond Township are "private roads" and as such are not private ways subject to

public easements and therefore have no relationship to the existence of an organized municipality, they are subject to the Private Ways Act for purposes of creation of a statutory road association in an unorganized territory. The court finds there is no direct evidence that the private roads in question were constructed or are primarily used for commercial or forest management purposes. The fact that the overwhelming majority of the landowners subject to the Hughes Plan are participating in the Tree Growth Tax Law does not provide that evidence. The court finds and the statute so specifically provides that assessments may be made to the landowners coming within the area of the Association and that such statutory provisions as are provided in that law make the claim against the plaintiffs valid and enforceable. The enforcement specifically authorizes a civil action.

For all the reasons stated herein, the defendant's motion for summary judgment is GRANTED; Judgment for DEFENDANT on plaintiffs' complaint.


DATED: September 19, 2017

Donald H. Marden
Superior Court Justice

14